## BENJAMIN A. DANIEL v. SANDUSKY PORTLAND CEMENT COMPANY.[1]

November 17, 1911.

Nos. 17,283—(92).

**Broker's commission — evidence.**

Under the facts shown the trial court was warranted in directing a verdict for certain broker's commissions.

Action in the district court for Ramsey county by an assignee of the claim to recover $1,387.20, the unpaid balance of the stipulated commission for negotiating a sale of cement. The written contract between buyer and seller was made a part of the amended complaint. The answer admitted the agreement for commission, and that the amount should be at the rate stated in the amended complaint; denied that it was agreed the commission had been or should be deemed as earned upon the signing of the contract, but alleged it was expressly agreed that the commission should be paid when the cement was delivered to and paid by the buyer, and not otherwise; alleged that the commission on the amount delivered by defendant amounted to $612.18, and had been duly paid; and that the buyer refused to

[1] Reported in 133 N. W. 162.

---

[Note] As to right of broker to commissions where sale fails because of inaccuracy of owner's representations, see note in 15 L.R.A.(N.S.) 1262.

accept any greater quantity. The reply admitted that the buyer refused to accept more than approximately the number of barrels of cement mentioned in the answer, but alleged that the cement so refused did not comply with the requirements of the contract and did not meet with the approval of the chief engineer of the Detroit River Tunnel Company, and he refused to approve the same; that in consequence of such failure to approve the cement, defendant exercised its option under the contract, affirmed the contract, and sold to other parties the unshipped balance of the cement, and charged to the account of the buyer the difference between the contract price and the price obtained therefor.

The case was tried before Kelly, J., who at the close of plaintiff's case denied defendant's motion to dismiss the action, and when defendant rested directed a verdict in favor of plaintiff for $651. From an order denying defendant's motion to set aside the verdict and for a new trial, it appealed. Affirmed.

*Dodge & Webber,* for appellant.

*D. E. Dwyer,* for respondent.

SIMPSON, J.

This is an appeal from an order denying defendant's motion for a new trial.

Upon the trial of the case, at the close of the testimony, the court, upon the motion of the plaintiff, directed a verdict in his favor for the sum of $651. The evidence submitted on the trial was not conflicting. It appeared that Dwyer-Field Company, a copartnership engaged in the brokerage business, negotiated a contract between the defendant company and Butler Bros.-Hoff Company for the sale of fifty thousand barrels of cement. In negotiating such contract the Dwyer-Field Company was acting under authority from the defendant, and it was agreed that they should receive for their services a certain sum per barrel, which sum was finally definitely fixed upon as four cents per barrel. It was agreed that the remittance of commission by the defendants should regularly be made on receipt of remittances for cement from the Butler Bros.-Hoff Company. Under the contract fifteen thousand three hundred twenty barrels of

cement were delivered by the defendants, accepted and paid for by Butler Bros.-Hoff Company, and the agreed commission thereon remitted to Dwyer-Field Company. Butler Bros.-Hoff Company declined to accept the balance of the cement.

By the terms of the contract of sale of the cement it was provided that: "Cement furnished guaranteed to pass the standard specifications of the American Society for Testing Materials, and to meet the approval of the chief engineer of the Detroit River Tunnel Company."

It was further provided: "Failure on the part of the buyer to carry out any of the provisions of this contract, or to pay when due any indebtedness to the Cement Co., shall authorize the Cement Co., at its option, to cancel by notice any portion of this contract remaining unfulfilled, or the Cement Co. may sell to other parties the unshipped balance of cement on this contract, and the buyer shall pay to the Cement Co. any deficiency in price obtained for the same."

The chief engineer referred to in the contract, after the delivery of the amount of cement stated, refused to approve the cement offered by the defendant company to complete its contract. The defendant company, claiming that its cement would pass the standard specifications of the American Society for Testing Materials, and that the action of the chief engineer in rejecting it was arbitrary and not taken in good faith, notified the buyer that it held fifteen thousand barrels of tested cement in storage to apply on the contract, and stated that, unless shipping instructions are given, "we will sell at market price and charge your company the difference between what we obtain for the cement at this time and what our contract with you calls for. In other words, any loss we sustain in marketing this cement will be charged to your company's account."

Some twenty days thereafter the defendant wrote Dwyer-Field Company: "We have sold on contract the cement, which we were holding on Butler Bros. contract, with a view of charging the Butler Co. in suit the difference between what we obtain for the cement and what the contract price calls for."

The plaintiff, by assignment, succeeded to the rights of Dwyer-Field Company.

The trial court based its direction of a verdict in the case on the ground that the defendant company had sold this fifteen thousand barrels of cement referred to in the above letters under and in pursuance of the terms of the contract negotiated by Dwyer-Field Company, and that upon the cement so sold the agreed commission of four cents per barrel was earned. The statement contained in defendant's letters clearly tended to establish that the defendant company had sold fifteen thousand barrels of cement under the Butler Bros.-Hoff Company contract. The defendant offered no evidence tending to show that such sale had not in fact been consummated, or that it had not received payment for the cement thereunder.

In view of the positive statement in its letters that the sale had been made, the court was warranted in determining that such was the fact. While the contract provided that commissions were to be remitted to Dwyer-Field Company when payment for the cement was made by Butler Bros.-Hoff Company, the defendant having elected to sell the cement to other parties in pursuance of the clause in the sales contract with Butler Bros.-Hoff Company, payment for the cement would not be received from the latter company. The defendant, having to this extent changed the course of dealing under the contract, cannot thereby escape paying the agreed commission. Under the circumstances shown, the commission on the fifteen thousand barrels was due and payable. The contract of sale had been fully executed as to such cement by the disposal thereof in accordance with the terms of the contract.

The order appealed from is affirmed.